Filed June 15, 1886.

------

### No. 12,861.

### Johnson v. The Board of Commissioners of Wells County et al.

Constitutional Law.—*Retrospective Legislation.*—*Curative Statutes.*—There is no inhibition in the State Constitution against the passage of retrospective statutes, and such legislation, of a curative character, which is

Johnson *v.* The Board of Commissioners of Wells County *et al.*

in accord with justice, equity and sound public policy, and which does. not materially interfere with or overthrow vested rights, imposes no new burdens, and does not infringe upon the judicial department of the government, will be upheld.

Same.—Such statutes will not be sustained where they purport to legalize proceedings had without jurisdiction over the subject-matter or the person, and where there was an entire lack of power on the part of the court, body, or officer, whose proceedings are sought to be legalized.

Same.—*Legislative Discretion.—General Rule.*—Where the thing omitted or irregularly done in the proceedings sought to be legalized by a curative statute, is something, the necessity for which the Legislature might have dispensed with or made immaterial by a prior statute, it is competent to dispense with it or declare it immaterial by subsequent legislation.

Same.—*Special Legislation.*—Except where the case falls within the cases. enumerated in section 23, article 4, of the Constitution, the Legislature is the sole judge as to whether or not a general law can be made applicable, and when in such cases the legislative judgment is expressed that special legislation is required, and a special curative or retrospective statute is, under such circumstances, enacted, it will be upheld.

Same.—An act of the Legislature, legalizing the action of a board of commissioners in the establishment of a free gravel road, is in no sense a special law "for laying out, opening, and working on, highways," within the meaning of section 22, article 4, of the Constitution.

Same.—In an action by F. to enjoin the collection of an assessment made in a proceeding for the establishment of a free gravel road, the Supreme Court held that the action of the board of commissioners in such establishment and all subsequent proceedings in the matter were void. Subsequently, a valid curative statute was enacted, legalizing all such proceedings of the board, and all assessments made under the same. After the taking effect of this statute, J., who was not a party to F.'s action, attempted by injunction to escape the payment of assessments made against his land in such proceeding.

*Held*, that J. is bound by the law as it stood when he commenced his action, and that he is not entitled to the relief prayed.

Same.—*Legalizing Act of April 11th, 1885, Constitutional.*—The act of April 11th, 1885, legalizing the action of the board of commissioners of Wells county, in relation to the construction of the Bluffton and Rockford gravel road, etc. (Acts 1885, p. 178), is constitutional and valid.

From the Wells Circuit Court.

*N. Burwell,* for appellant.

*J. S. Dailey, L. Mock, A. Simmons, J. J. Todd* and *E. R. Wilson,* for appellees.

Zollars, J.—The board of commissioners of Wells county were in session on the first Monday after the second Tuesday in October, 1881, for the purpose of receiving reports from school trustees, as provided by section 4441, R. S. 1881, and for no other purpose. They adjourned from day to day until the subsequent Thursday, being the 20th day of October, 1881. On that day a petition was presented to the board, signed by the requisite number of proper persons, as required by section 5092, R. S. 1881, asking for the construction of a free gravel road, known as the Bluffton and Rockford Gravel Road. A proper bond was also filed with the petition. The board appointed the requisite number of viewers and an engineer, and fixed the 21st day of November, 1881, as the day upon which they should examine, view, and lay out the road. After this action by the board, the proceedings were all regular to the final construction and completion of the road, and the issue and negotiation of the bonds, as required by the act. Appellant's lands were assessed $348, to be paid in five years, in equal semi-annual instalments. The amount charged against his lands for the years 1882 and 1883 he has paid.

All proceedings by the county board subsequent to the 20th day of October, 1881, as above stated, were had and taken at regular sessions of that body, as fixed by law.

The only infirmity in the proceedings is the initial steps taken on the 20th day of October, 1881. On that day the board was not sitting in regular or special session for the transaction of general business, but only, as above stated, for the one purpose of receiving reports from school trustees.

This proceeding was before this court in the case of *Fahlor* v. *Board, etc.*, 101 Ind. 167, and it was there held that a complaint by Fahlor to enjoin the collection of an assessment against his land was good, because it showed that the proceedings and orders of the county board had and made on the 20th day of October, 1881, were a nullity, the board not being in regular or special session, for the transaction of such

business.    The decision in that case was made on the 13th day
of March, 1885.

Upon the authority of that case, and the averments in the
complaint in the case before us, we assume that the proceed-
ings of the county board, on the 20th day of October, 1881,
were irregular, and for that reason a nullity, as well as all of
the subsequent proceedings resting thereon.

On the 11th day of April, 1885, an act was passed, with
an emergency section, the purpose of which was to legalize
the proceedings of the county board in relation to the gravel
road.    There is a lengthy preamble, reciting the facts, fol-
lowed by the following: "Therefore, section 1. *Be it enacted*
* * * That all the sessions of the board of commissioners
of Wells county, in the State of Indiana, and all the acts of
said board in relation to the Bluffton and Rockford Gravel
Road, * * are hereby legalized and declared valid; that all
the assessments and charges made for the construction of said
Bluffton and Rockford Gravel Road, * * and all the bonds
issued or sold in aid thereof, and all contracts, assessments
and levies made in relation thereto, are hereby legalized and
declared valid."    Acts 1885, p. 178.

By this action, commenced on the 1st day of May, 1885,
appellant seeks a perpetual injunction against the collection
of the unpaid assessment against his land.

The above act, if it is constitutional, is broad enough in
its terms to cover and legalize all of the proceedings by the
county board in connection with the gravel road.    We are
met, *in limine*, with the important question, is the act con-
stitutional?

That question involves the following inquiries:

1st. Is the act unconstitutional, because retrospective in
terms and effect?

2d. Is it unconstitutional, as being in conflict with section
23, of article 4, of the Constitution, which declares that in all
cases enumerated in section 22 of that article, and in all other
cases where a general law can be made applicable, all laws

shall be general, and of uniform operation throughout the State?

3d. Is the act unconstitutional, as being in conflict with section 22, of article 4, of the Constitution, which declares that the General Assembly shall not pass local or special laws in certain enumerated cases, among which is, " For laying out, opening, and working on, highways," etc.?

4th. Is the act unconstitutional, as being an infringement upon the judicial department of the State government by the legislative department? In other words, did the Legislature, in the passage of the act, assume and exercise judicial functions?

Of these in their order:

1st. There is no inhibition in the Constitution against the passage of retrospective statutes. That such statutes may be passed by the Legislature, in the absence of a constitutional inhibition, is well settled.

And especially is this so, if the effect of the statute is in accord with justice, equity and sound public policy. And hence such statutes have been sustained, where their effect was to render valid contracts which, but for them, would have been void. *Andrews* v. *Russell,* 7 Blackf. 474; *Reed* v. *Coale,* 4 Ind. 283; *Wood* v. *Kennedy,* 19 Ind. 68; *Price* v. *Huey,* 22 Ind. 18; *Sparks* v. *Clapper,* 30 Ind. 204; *Perrin* v. *Lyman,* 32 Ind. 16; see, also, *Henderson* v. *State, ex rel.,* 58 Ind. 244; *Pritchard* v. *Spencer,* 2 Ind. 486; *Flinn* v. *Parsons,* 60 Ind. 573.

It must be regarded as settled also, that curative or retrospective legislation will not be upheld if it materially interferes with or overthrows vested rights, creates and imposes new burdens, or infringes upon the judicial department of the government. The general and better rule is, that curative statutes will not be sustained as legalizing proceedings had without jurisdiction over the subject-matter, or the person, and where there was an entire lack of power on the part of the court, body or officer, whose proceedings are sought

to be legalized. *Strosser* v. *City of Fort Wayne*, 100 Ind. 443, and the cases there cited; see, also, Welty Law of Assess., pp. 381, 386; *Lewis* v. *Brackenridge*, 1 Blackf. 220; *Bryson* v. *McCreary*, 102 Ind. 1. Some of our cases, however, at first blush, seem to carry the rule further.

It is settled by our decisions, and the authorities elsewhere, that curative or retrospective statutes may cure defects and irregularities in proceedings, even though the defects and irregularities are so flagrant as to render the proceedings, for all practical and enforceable purposes, null and void.

During the late War, the boards of commissioners of many of the counties in this State made appropriations in different forms in the way of bounties to volunteers. At the time those appropriations were made, they were without authority, for the reason that while there was a law authorizing county boards to appropriate money to take care of soldiers' families, and to arm and equip military companies for home defence, there was no law authorizing such appropriations in the way of bounties to volunteers in the service of the armies of the United States.

On the 3d day of March, 1865, an act was passed legalizing all bonds or orders theretofore issued, or appropriations made by and under the authority of the boards of commissioners of the several counties, for the purpose of procuring or furnishing volunteers for the armies of the United States, etc. In a number of cases that came before this court, it was held, that at the time the appropriations were made, they were unauthorized by law, but were validated by the curative act of 1865, which was a constitutional and valid statute. *Coffman* v. *Keightley*, 24 Ind. 509; *Board, etc.,* v. *Bearss*, 25 Ind. 110; *King* v. *Course*, 25 Ind. 202; *Nave* v. *King*, 27 Ind. 356; *Miller* v. *Board, etc.,* 29 Ind. 75; *Board, etc.,* v. *Onstott,* 29 Ind. 384; *State, ex rel.,* v. *Buckles*, 39 Ind. 272; *Sithin* v. *Board, etc.,* 66 Ind. 109.

In the case last above, in speaking of the curative act of

March 3d, 1865, and the fact that the appropriation was made at a time when the county board was not legally in session, it was said: " The act has thus been held valid as legalizing the orders of boards, which they had no power, even when in regular session, to make. And if the statute thus supplies the want of power and makes valid such orders made without power, much more should it supply any defect as to the regularity or legality of the sessions of the boards, when such orders were made. * * * There can be no doubt of the power of the Legislature to cure, by subsequent act, any defect growing out of the fact that the orders of the board were made at a time when it was not in legal session." As in line with the rulings in the above cases, see *Halstead* v. *Board, etc.*, 56 Ind. 363.

It was held in at least two cases, that until the election of trustees of towns was certified as required by statute, their actions were void. *Dinwiddie* v. *President, etc.*, 37 Ind. 66; *Pratt* v. *Luther*, 45 Ind. 250.

In 1875 a retrospective statute was passed, validating all actions of such trustees before their elections were so certified. This act was held constitutional and valid.

In the case of *Gardner* v. *Haney*, 86 Ind. 17, it was said: " Before the enactment of this legalizing and curative statute, this court held, with much apparent reluctance, that the acts and ordinances of a board of town trustees, before the proper certified statement of their election had been made out and filed, were invalid and void. *Dinwiddie* v. *President, etc.*, 37 Ind. 66; *Pratt* v. *Luther*, 45 Ind. 250. But it was competent for the General Assembly, as the supreme and sovereign power of the State, to legalize and validate the acts and ordinances of the trustees *de facto* of the town of Monticello, and this was done, we think, by the aforesaid act of March 13th, 1875."

Under our general statutes, it is necessary that judgments shall be entered up and signed by the judge, in order that a valid execution may be issued thereon. *Galbraith* v. *Sidener*,

28 Ind. 142; *Passwater* v. *Edwards,* 44 Ind. 343. In such case, however, the judgment is not absolutely void, but simply not enforceable by execution. *Kent* v. *Fullenlove,* 38 Ind. 522.

There is a line of cases holding that such signature by the judge may be dispensed with, and the judgment, execution and all proceedings thereunder validated, by a curative or retrospective statute. *Cookerly* v. *Duncan,* 87 Ind. 332. And so it was held, that no valid judgment could be rendered against a party without summons, and with no other appearance than a waiver and an appearance written upon the complaint. *McCormack* v. *First Nat'l Bank,* 53 Ind. 466.

Subsequently, a retrospective statute was passed validating all judgments and proceedings under them, rendered upon such an appearance. That statute was held to be constitutional and valid. *Muncie Nat'l Bank* v. *Miller,* 91 Ind. 441 ; *Vanslyke* v. *Shryer,* 98 Ind. 126.

It has been held, also, that judgments rendered at a special term of court, not held pursuant to law, may be validated by a retrospective statute. *Walpole* v. *Elliott,* 18 Ind. 258. In that case it was said : " The Supreme Court of this State decided, in the following cases, that it was competent for the Legislature, by a curative statute, where not restrained by a constitutional provision, to make a void thing valid. * * * Curative statutes are but a species of retrospective legislation ; and retrospective legislation is valid where not forbidden by the Constitution." That case, in its general scope, has been cited and approved as late, at least, as the case of *Kelly* v. *State, ex rel.,* 92 Ind. 236, in three of the cases above cited. *Sithin* v. *Board, etc. ; Gardner* v. *Haney ; Muncie Nat'l Bank* v. *Miller.*

The court quoted with approval the rule laid down by Judge Cooley, which seems to be correct as a general rule applicable in all cases of retrospective legislation, as follows : " The rule applicable to cases of this description is substantially as follows : If the thing wanting, or which failed to

be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by a prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute.    And if the irregularity consists in doing some act, or in the mode or manner of doing some act which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."    Cooley Const. Lim. 371.

In the case of *Muncie Nat'l Bank* v. *Miller, supra,* it was said:    " It was competent for the General Assembly to have provided by law,.before the rendition of the judgment complained of by the appellee, that a written waiver by the defendant of the issue and service of a summons, and of his appearance in or to the action, endorsed on the complaint, should be equivalent to the issue and service of a summons on the defendant in the action.    This being so, it was equally competent for the Legislature to provide by law, after the rendition of the judgment, that any judgment rendered in good faith upon such written waiver by the defendant of the issue and service of a summons on him in the action, ' shall be deemed legal and valid in all respects, the same as if a summons had been duly issued and served.' "·

Applying the above rulings, and the rule upon which they rest, to the case before us, it may well be said that as the Legislature might, in the first instance, have provided by general law for the location and opening of free gravel roads by the county boards at any session, so it can, by subsequent curative or retrospective general law legalize and validate all such proceedings taken and had at any session of such boards. The curative act of 1885, therefore, is not objectionable on the ground that it is retrospective.

The general law authorized county boards to lay out, open and construct free gravel roads.    In the case before us, the board of commissioners of Wells county attempted to proceed under that law, but made the mistake of taking the

initial steps, not at a regular session, but at a session when the board was not authorized to do such business. There was not a want of power, or jurisdiction over the subject-matter, because the board had general authority to lay out and construct free gravel roads. There was a defect and irregularity in the procedure, and that defect and irregularity were such as might be cured by a legalizing statute, and such as were cured by the legalizing act of 1885, unless that act is invalid upon other grounds than simply being retrospective.

2d. The curative statutes involved in the above cited cases, were all general in their terms. The act of 1885, involved here, is special in its terms. Is it for that reason unconstitutional and void? As we have seen, section 23, of article 4, of the constitution, declares that in all cases enumerated in section 22 of that article, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State. Section 23 recogniz's the fact that there may be cases where general laws would be unnecessary and inapplicable, and impliedly authorizes the passage of special laws to meet such cases. And hence many special and local laws have been upheld, and the rulings have been, that where the case does not fall within the cases enumerated in section 22, it is for the Legislature to determine whether or not a general law can be made applicable, and ‘that the legislative judgment upon that question will not be reviewed by the courts. *Gentile* v. *State*, 29 Ind. 409; *Longworth* v. *Common Council, etc.*, 32 Ind. 322; *State, ex rel.,* v. *Tucker*, 46 Ind. 355; *Vickery* v. *Chase*, 50 Ind. 461; *Cash* v. *Auditor, etc.*, 7 Ind. 227; *Clem* v. *State*, 33 Ind. 418; *Stocking* v. *State*, 7 Ind. 326; *Eitel* v. *State*, 33 Ind. 201.

For the same reason that, in some cases, special statutes may be enacted in the. first instance, special retrospective statutes may be enacted. And as, in some cases, the Legislature is the sole judge as to whether or not a general law can be made applicable in the first instance, so, in such cases, it

is the sole judge as to whether or not a general retrospective statute can be made applicable. And hence special curative or retrospective legislation has been upheld by this court. *Millikin* v. *Town of Bloomington*, 49 Ind. 62.

The case of *Marks* v. *Trustees of Purdue University*, 37 Ind. 155, involved a donation made by the county board for the purpose of securing the location of the university in that county. WORDEN, C. J., delivering the opinion of the court, said: "No statute has been cited, and we are not aware of the existence of any, in force at the time, that authorized the making of the order (by the board). It follows that the order was made without legislative authority. Still it was not void in that absolute sense that made it incapable of ratification. If a party, without authority, but professing to act as the agent of another, does an act in the name of his supposed principal, the act is not absolutely void, but may be ratified by the supposed principal, and when so ratified it is as valid as if the pretended agent had had full authority when the act was done. That an order of the board of commissioners, made without authority of law, may be ratified and rendered valid and effectual, is established by the numerous cases in this court upholding the act of March 3d, 1865, 3 Ind. Stat. 565, legalizing bonds, orders, and appropriations made for the purpose of procuring or furnishing volunteers."

After holding that the special act of the Legislature accepting the donation operated as a ratification of the action of the county board, it was further held that the acceptance was properly made by special act, and that it was for the Legislature to judge whether or not a general act could be made applicable.

The case of *Kelly* v. *State, ex rel., supra*, involved the validity of a special curative statute, legalizing certain acts of the board of commissioners of Clinton county in the purchase of certain grounds at sheriff's sale, etc. In the decision of the case it is said, that, conceding, without deciding, that the purchase, etc., by the county board was unauthorized by law,

and technically void, it was competent for the General Assembly to legalize and validate all such acts, and that that was done by the special curative statute. It was held that the statute did not fall within any of the cases enumerated in section 22, of article 4, of the Constitution, and that, therefore, it was for the Legislature to determine as to whether a general law could be made applicable. See, also, *Mount* v. *State, ex rel.*, 90 Ind. 29 (46 Am. R. 192); *State, ex rel.*, v. *Sickler*, 9 Ind. 67.

Upon the authority and reasoning of the above cases, it must be held here that the curative act of 1885 is constitutional and valid, unless it falls within the cases enumerated in section 22, of article 4, of the Constitution.

3d. Section 22, as we have seen, inhibits the passage of local or special laws in certain enumerated cases, among which is, " For laying out, opening, and working on, highways," etc.

At the time the Constitution was adopted there was no law for the laying out and opening of free gravel roads. For the purposes of this decision, however, we assume that the laying out and opening of a free gravel road, is the laying out and opening of a highway, and that hence a local or special statute for the laying out and opening of such a road would fall within the constitutional inhibition.

This brings us to the question, is the curative act of 1885 in any just sense a local or special act for the laying out and opening of a highway? After mature deliberation, we think it is not. It does not purport to be such an act. It does not provide, in any way, for the laying out or opening of a road. It was enacted upon the theory that there was a general law for the laying out and opening of such roads, and that the road in question had been laid out and opened under that act, or, at least, that it had been laid out, opened and constructed, and that the county board had attempted to lay out, open and construct it under the general law, and that in so doing there had been an omission and mistake in the proceedings. The act is just what it purports to be, not an act

for the laying out and opening of a gravel road, but an act "to legalize the records and action of the board of commissioners of Wells county, Indiana, in relation to the construction of the Bluffton and Rockford Gravel Road. * * To legalize the assessments made against certain real estate for the construction thereof. To legalize the bonds issued by said board in aid of the construction of said road, to legalize all acts in relation to said road, and declaring an emergency."

This holding is fully sustained by the case of *State, ex rel.,* v. *Squires,* 26 Iowa, 340. The Constitution of Iowa contains two sections identical with sections 22 and 23, of article 4, of our Constitution.

The above case was an action by the district attorney, by way of *quo warranto,* on behalf of the State, to oust certain persons, claiming to be the officers of a corporation styled "The Independent School District of Epworth," the existence of which the district attorney denied, upon the ground that the district when organized did not contain three hundred inhabitants, and that ten days' notice of its organization had not been given, as required by the general law. The defendants answered, admitting the defects in the organization of the district, and relying upon "an act to legalize the organization of the Independent School District of Epworth." The question was made, and insisted upon by the district attorney, that the curative act was unconstitutional and void, because in conflict with the sections of the Constitution of the State which prohibited the creation of school districts by special acts, and required all laws to be made general, when they can be made applicable. In answer to this contention the court said: "It is claimed by appellant's counsel that under our Constitution (article 3, section 30), which provides that the General Assembly shall not pass local or special laws, etc., it would not be competent for the Legislature to pass a law incorporating the 'independent school district of Epworth.' This proposition can not be successfully controverted. * * In our view, however, the act set up in the defendant's an-

swer is not, in any just sense, a law creating a corporation, but is, both in law and fact, what its title purports, a curative act legalizing the defective organization of an independent school district." After holding the special act valid, and in speaking of the requirements of the general law for the organization of independent school districts, it was further said: "It was a matter of discretion with the Legislature to require the performance of these precedent conditions; hence, it may waive a failure to perform them. Nor is the power of the Legislature to cure defective or irregular proceedings limited by the fact, that, but for such curative act, the defective proceeding would be wholly invalid or inoperative."

The holding here finds some support also in former cases decided by this court, although the exact question under discussion here seems not to have been made in those cases. Section 22, supra, of the Constitution, forbids the passage of local or special laws regulating county and township business. In the case of Kelly v. State, ex rel., 92 Ind. 236, already cited, a special act, legalizing the purchase of grounds by the board of commissioners of Clinton county at sheriff's sale, was held constitutional and valid. See, also, Mount v. State, ex rel., supra.

If there had been an entire lack of power on the part of the county board to construct gravel roads, and the curative statute attempted to legalize their acts in constructing the road in question, we should have an entirely different case.

4th. We come now to the question upon which appellant especially relies for a reversal of the judgment. His contention is, that in the case of Fahlor v. Board, etc., supra, the whole proceeding was held to be null and void, and that in the subsequent enactment of the curative statute, the Legislature invaded the functions of the judicial department of the State government, and that the act is, therefore, null and void. In support of this contention, he relies upon the case of Columbus, etc., R. W. Co. v. Board, etc., 65 Ind. 427, and the cases there cited. In that case, a complaint had been

filed by a taxpayer of the township to enjoin the collection of a tax upon his land, levied for the purpose of making a donation to the railway company.

The complaint was held good, because it showed that the county board was not legally in session, when the petition was filed, and the order for the election made. Subsequent to the overruling of the demurrer, the Legislature passed a special act, with a preamble reciting the facts, legalizing, or attempting to legalize, all the actions of the county board ordering the election, making the donation, and levying the special tax. After the passage of this act, the court below changed its ruling and sustained the demurrer to the complaint. It was held by this court, that in the passage of the act, with its preamble, the Legislature invaded and exercised the functions of the judicial department of the State government, in a pending action, and that, for that reason, the curative statute was unconstitutional and void. There are these differences between that case and the case in hearing: In that case, the objecting and complaining party had a suit pending when the curative statute was passed. In the case before us, appellant did not commence his action until after the passage of the curative statute. In that case, the tax was a general one upon all the property in the township, and when overthrown as to one taxpayer, it might, with some reason be said, that it could not be upheld as to other taxpayers of the township, without imposing unequal taxation. Here, the burden is imposed, not by a levy of a general tax, but by special assessment on account of benefits received. In such cases, it does not necessarily follow that, because an assessment against one land-owner is overthrown, the assessments against other land-owners must go down with it. Without questioning the correctness of the ruling in the case last above cited, it may not be improper to say, in passing, that there is a respectable array of authorities, holding that it is not important that the legislative act, which cures the defects and irregularities, was passed after suit brought in which

such defects and irregularities became matters of importance; that the bringing of suit vests in a party no right to a particular decision, and that his case must be determined on the law as it stands, not when the suit was brought, but when the judgment is rendered. Cooley Const. Lim. 481, and cases there cited; see, also, *Millikin* v. *Town of Bloomington, supra; King* v. *Course, supra; Price* v. *Huey, supra; Walpole* v. *Elliott, supra.*

In the case of *McDaniel* v. *Correll,* 19 Ill. 226, cited in the case of *Columbus, etc., R. W. Co.* v. *Board, etc., supra,* the curative act was held unconstitutional, because it undertook to validate a judicial proceeding which was void for want of jurisdiction over the persons of some of the defendants. That, clearly, is not the case before us.

In the case of *Denny* v. *Mattoon,* 2 Allen, 361, also cited in the case of *Columbus, etc., R. W. Co.* v. *Board, etc., supra,* proceedings in insolvency had been enjoined and adjudged to be invalid because had before a person who had no right or title to act as judge. Afterwards, an act was passed by the Legislature which, after reciting the facts, declared that the proceedings in insolvency should be deemed good and valid in law to all intents and purposes whatever. It was held that that act was unconstitutional and void, because it was an attempt to declare good and valid, what the court had declared to be illegal and invalid; that it was, therefore, an unwarranted attempt on the part of the Legislature to exercise judicial functions, and, if upheld, would dissolve a perpetual injunction granted by the court. That case differs very materially from the case before us. There, an adjudication that the proceedings in insolvency were illegal and void, bound not only the assignor and assignee, but all creditors, because they were parties in interest and hence parties in privity. They, and each of them, were as much bound by the adjudication as if they had been parties in name to the action in which the adjudication was made. The curative statute, therefore, would have overthrown the judgment,

not only as to the parties named in the action, but as to all creditors who were bound by the adjudication.

This court in the case of *Fahlor* v. *Board, etc., supra,* held that upon the facts stated by Fahlor in his complaint, he was entitled to an injunction, and reversed the judgment because a demurrer to his complaint had been sustained below. Whether or not Fahlor has prosecuted his action to final judgment, and procured an order perpetually enjoining the collection of the assessment against his land, is not shown by the record before us. Assuming that he has, it may well be said that he will not and can not be affected by the curative statute of 1885. It is well settled that the Legislature can not overthrow judgments by. legislative mandate, curative statutes or otherwise.

At the time he commenced his action, and at the time his case was passed upon by this court, the assessment against his land could not have been enforced by reason of the infirmities in the proceedings by the county board, as stated in his complaint. Before appellant commenced his action, those infirmities had been healed by the curative act of 1885. Appellant, therefore, is asking that his rights shall be adjudicated, not under the law as it stood when he commenced his action and sought the aid of the courts, but under the law as it stood prior to that time. He seeks protection from the judgment that was, or might have been rendered in favor of Fahlor. He was in no way a party to Fahlor's action, nor was he, as we think, in any way privy thereto. Before the passage of the curative statute of 1885, the proceedings by the county board, by reason of the irregularities already mentioned, were a nullity as to appellant. They were not more so, after the adjudication in the Fahlor case. That Fahlor may escape payment by reason of the ruling and adjudication in his case, will not result in unequal taxation, because the assessments were not imposed as taxes. They were imposed as the equivalent of benefits received from the construction of the gravel road. Neither will the escape of

Fahlor increase appellant's burdens, nor lessen his benefits. We know of no principle or rule of the law that will extend and apply the ruling in Fahlor's case to the case of appellant, commenced subsequent to the passage of the curative act of 1885.

It results from the above, that the court below should have sustained appellee's demurrer to the complaint. The case is brought here by appellant, upon the ruling of the court below in overruling his demurrer to appellee's answer. We do not extend this opinion to inquire as to whether or not the answer is good, as in any event, it is good enough for a bad complaint. *Ice* v. *Ball*, 102 Ind. 42.

Judgment affirmed, at appellant's costs.

